█ In the Matter of STEPHANIE CANNON O'BRIEN, Petitioner, v THOMAS P. DiNAPOLI, as New York State Comptroller, et al., Respondents. [983 NYS2d 333]—

Peters, P.J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller which denied petitioner's application for disability retirement benefits.

Petitioner is the widow of Richard O'Brien (hereinafter decedent), a State Trooper who died as a result of injuries sustained in a non-work-related accident on December 7, 2009. On that date, petitioner and decedent's coworkers attempted to file an application for disability retirement benefits on decedent's behalf. After many unsuccessful attempts to fax the application, it was ultimately received by respondent New York State and Local Retirement System minutes after decedent's death. The application was initially denied as untimely and, following a hearing, respondent Comptroller adhered to that determination. This proceeding ensued.

The Comptroller has exclusive authority to determine all applications for retirement benefits and the "determination must be upheld if [the] interpretation of the controlling retirement statute is reasonable and the underlying factual findings are supported by substantial evidence" (*Matter of Schwartz v McCall*, 300 AD2d 887, 888 [2002] [citations omitted]; *see Matter of Lewandowski v New York State & Local Police & Fire Retirement Sys.*, 69 AD3d 1027, 1028 [2010]). Pursuant to the applicable statutory provisions, an applicant may receive State Police disability retirement benefits only if he or she is actually a member of the Retirement System at the time of filing (*see* Retirement and Social Security Law § 363-b). Membership in the Retirement System ceases upon death (*see* Retirement and Social Security Law § 340 [f] [2]). With the exception of documents sent by certified mail, return receipt requested, filing "only occurs upon actual delivery to and receipt by [the Retirement System]" (*Matter of Jarek v McCall*, 268 AD2d 654, 655 [2000]; *see* Retirement and Social Security Law § 19; 2 NYCRR 366.2).

While it is unfortunate that so many failed attempts were made to fax the retirement documents while decedent was still alive, there is no dispute that he died—and his membership in the Retirement System therefore terminated—prior to their receipt. Despite the contrary position taken by the dissent, this case *is* about—and hinges on—whether petitioner was or was not a member of the Retirement System at a particular moment in time. If the application was received before petitioner's death, petitioner would still have been a member of the Retirement System at the time of filing, and the application would have been timely. On the other hand—without regard to who actually filed it—when the application at issue here was filed, decedent was no longer alive and, thus, no longer eligible to receive disability retirement benefits. As the Comptroller's determination that the application was untimely is consistent with the applicable statutory provisions, we find no basis upon which to disturb it (*see Matter of Krysa v New York State & Local Retirement Sys.*, 53 AD3d 1027, 1029 [2008]; *Matter of Jarek v McCall*, 268 AD2d at 655; *Matter of Kriedemann v New York State Teachers' Retirement Sys.*, 134 AD2d 746, 747 [1987], *lv denied* 71 NY2d 801 [1988]; *Matter of Blaisdell v New York State Teachers' Retirement Sys.*, 62 AD2d 1116, 1117 [1978], *lv denied* 45 NY2d 706 [1978]).* To the extent that petitioner argues that

---

* To the extent that petitioner argues that the denial of benefits is arbitrary and capricious inasmuch as the Comptroller would have deemed the applica-

the Comptroller acted arbitrarily and capriciously by not extending the time for filing under the circumstances of this case, petitioner's reliance on Retirement and Social Security Law § 390 (bb) (1) is misplaced. That statute permits the Comptroller to extend the time to file an option election, and petitioner cites no similar statute that would allow the Comptroller to extend the time to file the application for retirement benefits itself. In the absence of such statutory authority, the Comptroller lacked the power to extend the time for filing and the failure to do so here therefore cannot, as the dissent suggests, be deemed arbitrary and capricious (*see Matter of Morrissey v New York State Employees' Retirement Sys.*, 298 NY 442, 449-450 [1949]; *Matter of Gammone v Murphy*, 299 AD2d 551, 551 [2002], *appeal dismissed* 99 NY2d 650 [2003]; *Matter of Brei v Regan*, 89 AD2d 1060, 1061 [1982]).

Lahtinen and Stein, JJ., concur.

Egan Jr., J. (dissenting). I agree with the majority that membership in respondent New York State and Local Retirement System ceases upon death. But this case is not about whether Richard O'Brien, an Investigator for the State Police and petitioner's husband (hereinafter decedent), was or was not a member of the Retirement System as of a particular moment in time; it is about whether a written application for disability retirement benefits completed by petitioner on decedent's behalf prior to his death but received by the Retirement System via fax minutes after his death was timely filed. Reading Retirement and Social Security Law § 363-b in isolation, one could perhaps conclude that a retirement application had to be physically filed with respondent Comptroller before a member died and that receipt of those papers at any time after death—even seven minutes later—would be too late. If that were the rule, the denial of petitioner's application by the Comptroller—and the result reached by my colleagues—would be defensible although harsh. But, in my view, Retirement and Social Security Law § 363-b cannot be read alone; rather, it must be read in conjunction with both Retirement and Social Security Law § 19 and 2 NYCRR 366.2.

The cited provisions reflect the realities of the modern world—that members do not always file for retirement in person, but also do so by mail or fax. In each case, the statute or regulation employ comparable language. Retirement and Social Security Law § 19 provides that "[w]henever a statute requires that a document be filed with the . . . [C]omptroller

---

tion timely if it was sent by certified mail on the same date, but after the time of decedent's death, such claim is speculative.

. . . within a prescribed period of time or by a specified date, and such document has been mailed . . . by . . . certified mail, return receipt requested, the document shall be deemed filed on the *date* of mailing" (emphasis added). Similarly, the regulation provides that "[w]henever a statute requires that [a] document be filed with the Comptroller . . . within a prescribed period of time or by a specified date, such document will be considered filed on the *date* that it has been successfully transmitted via facsimile . . . to the Retirement System" (2 NYCRR 366.2 [emphasis added]). Notably, both the relevant statute and the subject regulation provide that the document in question is deemed to be filed on the *date* that it is faxed or mailed—not the precise moment in time that it is successfully received by the postal service or via fax machine. Decedent died on December 7, 2009, and his application for retirement was received on December 7, 2009. Therefore, to my analysis, his application was timely filed—notwithstanding the fact that he died seven minutes before that application actually was received via the Retirement System's fax machine. Accordingly, I would annul the Comptroller's determination and grant the petition.

Moreover, even assuming—as the majority posits—that the filing regulation must yield to Retirement and Social Security Law §§ 340 (f) (2) and 363-b, I nonetheless would annul the Comptroller's determination based upon the unique facts of this case. The record reflects that upon learning of decedent's debilitating injuries, Neely Jennings, a lieutenant with the State Police, transmitted the disability paperwork via fax machine to Vincent DeLango, a State Police investigator who had been dispatched to St. Luke's Cornwall Hospital in Orange County where decedent was undergoing treatment. Neely first attempted to transmit the relevant documents to DeLango at 5:28 p.m. When that attempt failed, Neely made a second unsuccessful attempt at 5:32 p.m., followed by a partially successful third attempt at 5:36 p.m. and a final successful attempt at 5:41 p.m. There is no question that decedent was alive throughout this time period.

After petitioner completed the relevant portions of the application and accompanying option election form (hereinafter referred to as the application), DeLango embarked upon a lengthy series of attempts to transmit the document to Jennings, who was to review the application and transmit it to the Retirement System. Beginning at 6:01 p.m., DeLango—utilizing what ultimately entailed three different fax machines—made nine separate attempts to return the completed application to Jennings before finally succeeding at 6:19 p.m. Again, decedent

was alive during this time period. Upon receipt of the completed application at or about 6:20 p.m. (while decedent was still alive), Jennings reviewed the document and faxed it to the Retirement System at 6:30 p.m., where it was received at 6:31 p.m. In the interim, decedent passed away at 6:24 p.m.

It is undisputed that decedent was alive throughout the numerous, repeated attempts to transmit the necessary paperwork to Jennings for filing with the Retirement System and that the completed application was received by the Retirement System only moments after decedent died. It also is undisputed that this minuscule delay (seven minutes) was, as the Hearing Officer correctly found, occasioned solely by "the inferior quality and geographic restrictions of the hospital's fax machines"—matters that clearly were beyond petitioner's control. Notably, nothing in the record even remotely suggests that any fraud or deceit occurred here, and it is readily apparent that petitioner and those assisting her—recognizing the dire nature of decedent's injuries—endeavored to promptly and diligently submit the underlying application in a timely fashion. Under these circumstances, the Comptroller's decision to deny petitioner the requested benefits is, to my analysis, arbitrary and capricious.

Adjudged that the determination is confirmed, without costs, and petition dismissed.